Asch, J.
(dissenting). The lease between the parties provides in part: “Tenant shall not assign this agreement, or sublet the premises, or any part thereof, without the landlord’s consent in writing * * * Landlord shall not unreasonably withhold consent to subletting.”
Did the court below err in holding that the sublet clause in the written lease was voided by statute? Accordingly, the critical issue in this appeal is the effect to be given to section 226-b of the Real Property Law, amended as of June 3, 1975. The majority reads that language of the section which provides “If the landlord unreasonably withholds consent for such sublease or assignment, the landlord must release the tenant from the lease upon the request of the tenant”, as merging the pre-existing common law and statutory remedies which had been available to a tenant into a single right to terminate the lease. I must disagree with this view of the application of section 226-b of the Real Property Law and hence dissent from the result reached by the majority.
Section 226-b can be understood best in the light of the history and development of the landlord and tenant relationship. As the medieval system of land tenure withered away, landlord and tenant relationships proliferated. Over the centuries which intervened, to the present, persisting *81 feudal attitudes and the realities of economic power perpetuated those legal principles which favored landlords as against their tenants. The resultant imbalance in the construction and enforcement of lease provisions persisted long into this century.
Within a lifetime, the major wars, the consequences of industrialization, the gravitational pull of agricultural workers to the city, having resulted in urban congestion and a scarcity of residential housing. In New York, these factors and an increasing sensitivity on the part of law makers to the electorate (more tenants than landlords) tipped the scales of landlord and tenant law away from his historic bias. This shift in legal attitude has been evidenced by legislative adoption of rent controls, recognition of the warranty of habitability, imposition of multiple dwelling safeguards and a myriad of other laws designed to protect tenants. Long before this exhibition of legislative solicitude for the rights of tenants, one area in which the common law had been quite protective of the tenants’ rights was with respect to the assignment or subletting of the leasehold. Even in the formative days of the landlord and tenant law, the public policy supporting the free alienation of land was seen as stronger than the policy protecting landlords.
To the extent that the legislative history of section 226-b is not ambiguous, it supports the construction here asserted. In the absence of a clear directive from the Legislature that its amendment of section 226-b of the Real Property Law was designed to curtail the common law and the statutory rights of the tenant to assign or sublet rented premises, it is my view that the section provides additional remedies rather than limits those alternatives previously in existence. The tenants in the instant matter therefore, in my opinion, have the option of either terminating the lease or subletting the premises upon the recalcitrance of the landlord, in accordance with the provisions of the lease.
Concur: Tierney, J. P., and Riccobono, J.; Asch, J., dissents in a separate opinion.